# IN THE COURT OF APPEALS OF IOWA

––––––––––––––

No. 25-0980
Filed July 22, 2026

––––––––––––––

**Jeffrey Wall,**
Plaintiff–Appellee,
v.
**City of Des Moines,**
Defendant–Appellant.

––––––––––––––

Appeal from the Iowa District Court for Polk County,
The Honorable David Nelmark, Judge.

––––––––––––––

**REVERSED AND REMANDED**

––––––––––––––

John O. Haraldson (argued), Assistant City Attorney, Des Moines,
attorney for appellant.

Matthew R. Denning (argued) and Christopher D. Spaulding of Spaulding
& Shaull, P.L.C., Des Moines, attorneys for appellee.

––––––––––––––

Heard at oral argument
by Ahlers, P.J., and Buller and Langholz, JJ.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

To succeed on a claim of bad-faith denial of workers' compensation benefits, an employee must prove—among other things—that the employer had no reasonable basis for denying the benefits. This is an objective test—generally for the court, rather than a jury, to decide. So when the factual or legal basis for the denial is fairly debatable, summary judgment is appropriate.

Here, the City of Des Moines contested Jeffrey Wall's claim for benefits before the workers' compensation commissioner because he "did not give proper 90-day notice of the work-related injury to the" City under Iowa Code section 85.23 (2021). Despite a 2017 statutory amendment that expressly provided that the ninety-day period starts when "the employee knew or should have known the injury was work-related," the parties' fight before the commissioner focused on when Wall knew or should have known his injury was not only work-related but also *compensable*. This added requirement for starting the notice period—known as the "discovery rule"—had been adopted by our supreme court before the 2017 amendment. The commissioner too applied the discovery rule and found that the City failed to prove Wall knew or should have known his injury was compensable more than ninety days before the City learned of his injury. And so, the commissioner awarded Wall benefits and penalty benefits. The City did not seek judicial review of that award.

Wall then sued the City for bad-faith denial of his workers' compensation claim. The City moved for summary judgment, arguing that it was fairly debatable whether Wall had provided proper notice, so Wall had failed to prove it had no reasonable basis for denying his claim. But the district court disagreed and denied summary judgment. And the City successfully sought interlocutory review of that decision from the supreme court.

The supreme court transferred the appeal to our court. And on our review, we agree with the City that the district court erred in denying summary judgment because it was at least fairly debatable that Wall failed to give proper notice under Iowa Code section 85.23.

First, under the plain text of section 85.23 in effect at the time Wall filed his workers' compensation claim, the City only had to prove that Wall knew his injury was work-related—not that it was compensable—more than ninety days before he notified the City of his injury. Unfortunately for the City, this correct interpretation of the statutory text was not resolved by an appellate court until after its time for seeking judicial review of the commissioner's award had passed. But in objectively assessing the reasonableness of the City's asserted basis for denying the claim—improper notice under section 85.23—we must consider the correct interpretation of that statute. And the parties agree that under that interpretation, Wall's claim should have been denied.

Second, even if we considered the reasonableness of the denial only under the now-defunct discovery rule, the City presented evidence from which the commissioner could have found that Wall knew or should have known that his injury was compensable more than ninety days before he notified the City of his injury. To be sure, there was conflicting evidence too. And one could debate the best inferences to draw from all the evidence before the commission. But rather than precluding summary judgement here in this bad-faith proceeding, that factual dispute in the underlying workers' compensation proceeding shows that the facts were fairly debatable. And that means that Wall's bad-faith claim fails as a matter of law.

We thus reverse the district court's denial of summary judgment and remand for dismissal of this suit.

## I.

Wall was employed by the City of Des Moines from September 1999 to December 2021. For most of his career, he worked as a truck driver in the City's forestry department. Then after eighteen years, he transferred to the street-cleaning department for his last four years before retirement. Wall's job in the forestry department required "a lot of bending and lifting." He described forestry as "probably the hardest department there is in the City."

According to Wall, he started experiencing pain in his left knee "off and on" while he was working in the forestry department. But he "could still do" his job and "would take pain pills." Wall noticed that his knee pain "started really getting worse" after he moved to the street cleaning department, especially "when [he] would get up and down from the trucks" and "when [he] was lifting something heavy." He suspected that his knee pain was work-related for a "few years." But he did not initially report the injury to the City or seek medical treatment because he "always fought through the pain, and [he] didn't want to get on light duty."

Wall eventually "reached out to the City clinic looking for treatment" in August or September 2021. He contacted his primary care physician after the City clinic told him that they "don't do x-rays." Wall saw his primary care physician for "evaluation of left knee pain" on August 10 and September 3. He then saw an orthopedic specialist on October 5. The specialist's notes from that visit state that Wall's knee pain had been "severe for the last 3 to 6 months." The specialist diagnosed Wall with severe arthritis, a torn meniscus, and bone spurs in his left knee and recommended surgical treatment. Wall had a total left knee replacement surgery in early December.

Later that month, Wall petitioned for workers' compensation benefits. The petition alleged that Wall sustained a cumulative injury to his left knee with an injury date of September 27, 2021. The City denied liability, asserting as an affirmative defense in its January 2022 answer that Wall "failed to provide proper or timely notice of the alleged injury." And at the January 2023 arbitration hearing before a deputy workers' compensation commissioner, the City continued to dispute the date of Wall's injury and argued that he "did not give proper 90-day notice of the work-related injury to the employer" under Iowa Code section 85.23. The City waived all other affirmative defenses.

Wall's immediate supervisor, Caleb Adams-Brown, testified at the hearing that he had known and worked with Wall since Wall's time in the forestry department. Adams-Brown agreed that "the work in the forestry department was more physically demanding than the work in street cleaning." And he testified that Wall never reported a work-related injury to him, and he "wish[ed] he would have" because he "consider[ed] Mr. Wall to be a friend." Adams-Brown also testified that he saw Wall limping "in the street cleaning department in that summer of [2021]," but he did not have any reason to believe that his limp was due to a work-related injury.

Kevin Buttrey, who served as Wall's fill-in supervisor from August to December 2021, testified that he had known Wall for twenty years and worked with him in the street cleaning department. Buttrey described street cleaning as "somewhat" heavy physical labor but "not to the extent of forestry." He also saw Wall limping at work between August and December 2021. And Buttrey said that he told "Wall to go to the City clinic about his left knee" during that timeframe because he would "tell an employee to go to the City clinic if they had a work-related injury."

Wall also testified at the hearing. Beyond his testimony described above, he said that he told both Adams-Brown and Buttrey that he "thought the work [he was] doing at the City was causing [his] left knee problem," but he did not say when he told them. In his earlier deposition, Wall testified that "the worst part" of his knee pain started around April 2021 and that he told Adams-Brown that he believed the pain was work-related either sometime "shortly after that" or in "September" 2021 "just before [he] called the clinic."

The deputy workers' compensation commissioner ultimately rejected the City's claim that Wall failed to give proper notice under section 85.23 in a May 2023 written decision. Relying on Wall's testimony, the deputy found that Wall's cumulative left knee injury manifested—that is, he knew he was injured and the injury related to his employment—sometime before Wall "moved from forestry to street cleaning because it was less physically taxing." But the deputy found that Wall did not recognize "that his work injury had a permanent adverse impact on his employability"—and was thus probably compensable—until his "pain became intolerable somewhere around October 2, 2021." The deputy thus reasoned that under the discovery rule, Wall's date of injury to start the ninety-day period for providing notice under section 85.23 was October 2, 2021. And the deputy found that "the employer had actual and imputed knowledge of [Wall's] potential work injury at least by August 2021." So the deputy concluded that Wall's "claim is not barred by lack of notice" under Iowa Code section 85.23.

The deputy thus awarded Wall permanent partial disability benefits, accepting the parties' stipulation to Wall's functional loss. And over the City's objection, the deputy awarded penalty benefits based on her finding the City failed to meet its burden to show "a timely investigation of [Wall's]

report of an injury, that the denial of the left knee claim is based on the results of that timely investigation, and that there was a timely communication to claimant of the reasons of the denial." *See* Iowa Code § 86.13(4)(c).[1]

The City appealed the deputy's decision to the workers' compensation commissioner, continuing to argue that benefits should have been denied for failure to give notice under section 85.23 and challenging the award of penalty benefits. The commissioner affirmed the deputy's decision in its entirety in October 2023. The City did not seek judicial review.

In December 2023, Wall sued the City for bad-faith denial of his workers' compensation claim. Less than two weeks later, our supreme court decided *Tweeten v. Tweeten*, 999 N.W.2d 270, 280–82 (Iowa 2023). In *Tweeten*, the court held that the legislature's 2017 amendment to the statute of limitations in Iowa Code section 85.26—which was identical to the amendment to section 85.23 at issue here—"modified the discovery rule" so that the "statutory period begins to run when the employee knows or should know that an injury is work-related, without regard to whether the injury is also serious enough to be compensable." 999 N.W.2d at 282.

The City eventually moved for summary judgment, arguing that Wall's bad-faith claim failed as a matter of law. First, the City argued that *Tweeten* clarified that Wall "did not timely report a work-place injury to his left knee" and so its denial "was more than just reasonable, it was in compliance with the law." And second, the City argued that even applying the old discovery rule, "[t]here is ample evidence in the record to suggest that a reasonable person in Wall's position would have recognized the nature,

---

[1] We cite the statute in effect at the time of the workers' compensation proceeding. In 2023, section 86.13(4)(c) was moved to section 10A.315(c). *See* 2023 Iowa Acts, ch. 19, § 1477(1)(m).

seriousness, or probable compensable nature of the injury" more than ninety days before Wall gave notice to the City of his injury.[2]

After a hearing, the district court denied the City's summary-judgment motion. The court described the "primary question" presented as "whether an insurer may rely on an amendment to and/or subsequent change in interpretation of the law to justify a previous decision to deny benefits." And the court reasoned that "there would be no question that the City had an "objectively reasonable basis for denial of [Wall's] claim" if it "had denied benefits based on an argument that the 2017 amendments to the Iowa Workers' Compensation Act abrogated the discovery rule." (Cleaned up). But because "the City failed to make that argument" in the workers' compensation proceeding, the court concluded that the City could not rely on that argument to defeat Wall's bad-faith claim.

The court also rejected the City's alternative argument that even applying the discovery rule, "the City still had a good faith basis for denying benefits." The court disagreed with the City's contention there was "ample evidence in the record" to support its view that the ninety-day notice period started in April 2021, reasoning that "the City cites only to evidence that Mr. Wall was experiencing increased pain in April 2021, not anything suggesting that Mr. Wall knew the serious nature of his injury at that time."

The City applied for interlocutory appeal of the summary-judgment ruling. Our supreme court granted the application. And after completion of the parties' briefing, it transferred the case to us.

---

[2] The City's trial briefing also included some references to the two-year statute of limitations under Iowa Code section 85.26 that might be construed as another argument that the bad-faith claim fails. But the City does not pursue this argument on appeal.

## II.

"Iowa law recognizes a common-law cause of action against an insurer for bad-faith denial or delay of insurance benefits." *Rodda v. Vermeer Mfg.*, 734 N.W.2d 480, 482 (Iowa 2007); *see also Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988). Such a bad-faith claim may be brought against an insurer or self-insured employer for denying workers' compensation benefits. *See Thornton v. Am. Interstate Ins. Co.*, 897 N.W.2d 445, 462–63 (Iowa 2017). And to succeed on that claim against an employer, an employee must prove that (1) the employer had no reasonable basis for denying the claim for workers' compensation benefits, and (2) the employer knew or had reason to know that the denial was without a reasonable basis. *See Rodda*, 734 N.W.2d at 483. As with all bad-faith claims, the employee must "negate any reasonable basis" for the denial. *Luigi's, Inc. v. United Fire & Cas. Co.*, 959 N.W.2d 401, 409 (Iowa 2021) (cleaned up).

A reasonable basis for the denial of benefits exists if the plaintiff's "claim is fairly debatable either on a matter of fact or law." *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). And "[a] claim is 'fairly debatable' when it is open to dispute on any logical basis." *Id.* In other words, "if reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable." *Id.* The employer need not succeed in convincing the workers' compensation commissioner that the employee's claim for benefits fails. *See id.* ("The focus is on the existence of a debatable issue, not on which party was correct."). But decisions of the commissioner or courts in other cases—whether decided before or after the employer's denial of benefits—"are relevant to whether the defendants' position on the legal issue was 'fairly debatable.'" *Rodda*, 734 N.W.2d at 485. As the supreme court has explained:

> Perhaps the most reliable method of establishing that the insurer's legal position is reasonable is to show that some judge in the relevant jurisdiction has accepted it as correct. The favorable decision need not have been available to the insurer at the time it acted on the claim. After all, if an impartial judicial officer informed by adversarial presentation has agreed with the insurer's position, it is hard to argue that the insurer could not reasonably have thought that position viable.

*Id.* (cleaned up).

Unlike the second element of a bad-faith claim, whether a claim is fairly debatable is decided objectively. *See Bellville*, 702 N.W.2d at 473. And so, it "can generally be decided as a matter of law by the court." *Id.* When deciding a bad-faith claim, "courts and juries do not weigh the conflicting evidence" on the underlying factual dispute but rather "decide *whether evidence existed* to justify denial of the claim." *Id.* at 474 (cleaned up). "Thus, if it is undisputed that evidence existed creating a genuine dispute" for the factfinder about whether the claim was correctly denied, "a court can almost always decide that the claim was fairly debatable as a matter of law." *Id.* And because a bad-faith claim cannot succeed as a matter of law when the underlying claim for workers' compensation benefits was fairly debatable, summary judgment is appropriate in those circumstances. *See Rodda*, 734 N.W.2d at 484–85 (affirming grant of summary judgment on bad-faith claim for denial of workers' compensation benefits); *see also* Iowa R. Civ. P. 1.981(3). We review a district court's summary-judgment ruling for correction of errors at law. *Rodda*, 734 N.W.2d at 482.

Here, Wall asserts that the City denied his claim for workers' compensation benefits in bad faith when it contested his petition for benefits by asserting the affirmative defense that he "failed to provide proper or timely notice of the alleged injury" with no reasonable basis. The City argues, as it did in the district court, that Wall's claim fails as a matter of law

because this affirmative defense was fairly debatable—whether under the correct interpretation of section 85.23 or the now-defunct discovery rule—even though the defense was ultimately rejected by the workers' compensation commissioner. The City is correct on both points.

We start with considering the correct law governing the City's denial. As relevant here, Iowa Code section 85.23 bars recovery of workers' compensation benefits unless the employer has "actual knowledge of the occurrence of an injury" or the employee gives "notice thereof to the employer within ninety days from the date of the occurrence of the injury." Originally, the "date of the occurrence of the injury" was not statutorily defined, and our supreme court adopted a discovery rule to determine when an injury occurs and the ninety-day notice period begins to run. *See Jacques v. Farmers Lumber & Supply Co.*, 47 N.W.2d 236, 238–40 (Iowa 1951). Under the discovery rule—which was also applied to determine when an injury occurs for purposes of starting the two-year statute of limitations under Iowa Code section 85.26—the date of the injury was tolled "until the employee also knows that the physical condition is serious enough to have a permanent adverse impact on the claimant's employment or employability, i.e., the claimant knows or should know the nature, seriousness, and probable compensable character of his injury or condition." *Herrera v. IBP, Inc.*, 633 N.W.2d 284, 288 (Iowa 2001) (cleaned up); *see also IBP, Inc. v. Burress*, 779 N.W.2d 210, 218–19 (Iowa 2010) ("The discovery rule can be applied to both the statute of limitations and the ninety-day notice requirement.").

In 2017, the legislature amended both section 85.23 and 85.26 to add an identical sentence to each section: "For the purposes of this section, 'date of the occurrence of the injury' means the date that the employee knew or should have known that the injury was work-related." 2017 Iowa Acts, ch. 23,

§§ 2, 3 (codified at Iowa Code §§ 85.23, 85.26(1)). Six years later in *Tweeten*, the supreme court interpreted the meaning of this amended text—in the context of section 85.26—for the first time. *See Tweeten*, 999 N.W.2d at 279–82. The court reasoned that "[t]he general assembly has chosen to limit the discovery rule to knowledge that an injury is work-related, not knowledge of the compensable nature of the injury as we had previously recognized," and that it would thus be improper to continue applying "our prior common law discovery rule to further toll the limitations period until the employee is also aware of the permanent adverse impact of an injury" because that "would add words to the statute that the general assembly did not—something we cannot do." *Id.* at 281. And so it held, "[f]or purposes of section 85.26, the two-year statutory period begins to run when the employee knows or should know that an injury is work-related, without regard to whether the injury is also serious enough to be compensable." *Id.* at 282.

Likewise, under the plain text of the amended section 85.23, the ninety-day notice period begins to run when "the employee knew or should have known that the injury was work-related"—regardless of the injury's compensability. *See* Iowa Code § 85.23; *Tyler v. Tyson Fresh Meats, Inc.*, No. 23-0393, 2024 WL 470352, at *1–2 (Iowa Ct. App. Feb. 7, 2024) (holding that "*Tweeten* controls" the interpretation of section 85.23 because "the legislature added identical language to sections 85.23 and 85.26(1)" and "we apply the discovery rule the same under both sections"); *IBP*, 779 N.W.2d at 218.

Applying this correct interpretation of section 85.23, it was at least fairly debatable that Wall did not report his knee injury for well over ninety days after he "knew or should have known that the injury was work-related." Iowa Code § 85.23. Wall testified at his deposition before the arbitration

hearing that he had "suspect[ed] that [his] knee pain was related to [his] work" for "probably the last few years." The deputy found in her decision that Wall's injury manifested—meaning he was aware it was work-related—sometime before Wall "was moved from forestry to street cleaning because it was less physically taxing" for his last four years with the City. And Wall's testimony was that he notified the City of his injury in his final year of employment—sometime between April and September 2021. Thus, had the commissioner correctly applied the amended section 85.23 rather than the discovery rule that amendment abrogated, Wall would have likely been barred from recovering workers' compensation benefits. Indeed, Wall does not dispute on appeal that after *Tweeten*, his workers' compensation claim would have been barred by section 85.23.[3]

Rather, Wall argues that the City cannot rely on the 2017 amendment to section 85.23 or *Tweeten* to show that the City's assertion of the lack-of-notice affirmative defense based on that statute was reasonable because the City did not make those specific arguments in the workers' compensation

---

[3] Because the City need only show that its affirmative defense was fairly debatable, we need not—and do not—decide that it would have indeed prevailed if the commissioner had applied the correct interpretation of amended section 85.23. Although not raised by Wall, we note that uncodified session law provides that the amendment abrogating the discovery rule applies only "to injuries occurring on or after" July 1, 2017. 2017 Iowa Acts, ch. 23, § 25(1). So correctly adjudicating that affirmative defense would have required deciding whether Wall's injury occurred on or after that date. We decline to go too far down this rabbit hole without the benefit of adversarial briefing. It is enough to say that one reasonable argument is that a cumulative injury like Wall's occurs for purposes of this applicability provision—as under the prior manifestation test—when the employee knows the injury is work-related. And while there is some evidence that Wall had that knowledge before July 1, 2017, other evidence—like his own testimony—could support a finding that he did not know his injury was work-related until after that date. Thus, even considering the applicability provision, the City's defense was fairly debatable.

case. Wall notes that *Tweeten* was decided two years after the City filed its answer asserting the defense and two months after the commissioner's decision rejecting that defense, and Wall's arguments in that case focused on showing lack of notice under the prior discovery rule. And so, Wall contends that considering this interpretation of section 85.23 now "would be illogical and inconsistent with Iowa's bad faith law" because it does not "focus on what the City relied upon to justify its denial at the time the denial decision was made" and would permit insurers to rely on an originally unstated reason that develops after the denial.

Wall's argument misses its mark because the City is not relying on a basis for denying Wall's claim different from the one it asserted in the workers' compensation proceeding. Throughout that proceeding, the City relied on the lack-of-notice affirmative defense under section 85.23. To be sure, the City did not specifically argue that the amendment to that statute abrogated the discovery rule. But the asserted basis for denying the claim—improper notice under section 85.23—is the same. And we fail to see how we can objectively assess the reasonableness of asserting that defense without considering what that statute actually required the City to prove—including the supreme court's most recent interpretation of it in *Tweeten*.

It matters not that *Tweeten* was decided after the workers' compensation proceeding was final. It might be different if *Tweeten* had overruled a prior governing precedent. But *Tweeten* merely recognized that the statutory amendment had abrogated the discovery rule when it was enacted four years before Wall's workers' compensation proceeding. *See Tweeten*, 999 N.W.2d at 281. So this is not a case where the City is seeking to avoid a bad-faith claim based on a change in the law that occurred after its denial—the amended statute existed at the time it asserted the defense based

on that statute. *See Seastrom v. Farm Bureau Life Ins. Co.*, 601 N.W.2d 339, 346 (Iowa 1999) ("The reasonable basis for denying the claim . . . must exist at the time the claim is denied."). And Wall offers no contrary authority requiring that we ignore the correct governing law for the basis actually asserted in denying the claim.

Even if we were to ignore this correct interpretation of section 85.23 and instead analyze the objective reasonableness of the City's lack-of-notice defense under the now-defunct discovery rule, the claim was still fairly debatable. *See Rodda*, 734 N.W.2d at 485. Our summary-judgment record is undisputed that the evidence before the commissioner created a genuine factual dispute for the commissioner to decide whether Wall knew or should have known the "nature, seriousness, and probable compensable character of his injury" more than ninety days before he gave notice to the City. *Herrera*, 633 N.W.2d at 288 (cleaned up); *see Bellville*, 702 N.W.2d at 473.

Looking first at the evidence of when Wall notified the City of his injury, the record shows that conflicting evidence existed that could support findings that Wall gave notice anytime between April and September 2021. As the City highlights, Wall's own testimony is conflicting—saying both that he told a supervisor that he believed his pain was work-related sometime "shortly after" the pain became "the worst" in April 2021 and that it was sometime in "September" 2021 "just before [he] called the clinic." Wall's regular supervisor, Adams-Brown, testified that Wall never told him of his injury. And his fill-in supervisor, Buttrey—who agreed that he told "Wall to go to the City clinic about his left knee" during his time supervising Wall—did not start filling in as Wall's supervisor until August 2021. So if a factfinder found the September 2021 notification date most credible, the City would

have needed to prove that Wall knew about the probable compensable character of his injury roughly no later than the end of May 2021.

Again, the record shows conflicting evidence about when Wall had the required knowledge to start the running of the ninety-day notification period under the discovery rule—ranging from September or October 2021, as Wall urged, to well before May 2021. Although Wall did not receive medical treatment for his knee injury until August 2021 or an official diagnosis until October 2021, he testified that "it was within the last year before [he] went to the doctor that it was really bothering [him]." And he said that "the worst part" of his knee pain started around April 2021. What's more, he testified that he delayed reporting the injury to the City or seeking treatment—as early as four years before while still in the forestry department—because he "didn't want to get on light duty." He instead decided to take pain pills on his own and fight "through the pain." And he had prior experience with a minor work injury, recalling that he reported the injury, had to fill out an accident report, and was off work for a few days until he recovered. This evidence generating a fact dispute in the workers' compensation proceeding was enough to make it fairly debatable whether Wall failed to give notice within ninety days of discovering his injury. *See Bellville*, 702 N.W.2d at 474.

Finally, we note that throughout his briefing, Wall places much emphasis on the workers' compensation commissioner's award of penalty benefits after finding that the City failed to adequately investigate his claim. But even if the City did not adequately investigate Wall's claim, that alone is not enough to establish that the City acted in bad faith in this separate tort action. *See id.* ("[A]n improper investigation, standing alone, is not sufficient cause for recovery if the insurer in fact has an objectively reasonable basis for denying the claim." (cleaned up)); *Luigi's*, 959 N.W.2d at 408 ("[T]o

establish bad faith [the plaintiff] must do more than show the investigation wasn't as thorough or all-encompassing as [the plaintiff] would have liked." (cleaned up)); *see also Boylan v. Am. Motorists Ins. Co.*, 489 N.W.2d 742, 744 (Iowa 1992) (noting that the penalty-benefit provision for workers' compensation cases "contemplates negligent conduct rather than the willful or reckless acts that are required to establish a cause of action" for bad faith).

Bottom line, the City's denial of Wall's claim for workers' compensation benefits for lack of notice under section 85.23 was "at least fairly debatable." *Rodda*, 734 N.W.2d at 485. Wall thus cannot establish his bad-faith claim as a matter of law, and the City is entitled to summary judgment. *See id.*; *Luigi's*, 959 N.W.2d at 410. We thus reverse the district court's denial of summary judgment and remand for dismissal of this suit.

**REVERSED AND REMANDED.**

Ahlers, P.J., concurs; Buller, J., dissents.

**BULLER, Judge** (dissenting).

I part ways with the majority because I agree with the district court there was a triable issue on Jeffrey Wall's bad-faith claim. In my view, two unique aspects of this case converge to support denying summary judgment. I dissent because I would affirm the district court.

First, there are sufficient facts in this record to determine the City did not adequately investigate Wall's claim before denying it. That's exactly what the workers' compensation commissioner found in awarding penalty benefits to Wall, and a reasonable jury could give weight to that finding.

Second, the City's post-hoc justifications relate to timeliness arguments it did not offer at the time of denial. On this point, I agree with the district court that our focus is on the stated reason for denial, not unstated reasons the insurer came up with after the fact, potentially after a change in the law. *See Seastrom v. Farm Bureau Life Ins.*, 601 N.W.2d 339, 346 (Iowa 1999) ("The reasonable basis for denying the claim . . . must exist at the time the claim is denied."); *see also*, 2 Allan D. Windt, *Insurance Claims & Disputes: Representation of Insurance Companies & Insureds* § 9:26 (6th ed. 2025) (collecting out-of-state cases). The majority takes the view—unargued by the City—that the law in effect at the time of injury could have supported the denial if the City had made that argument or done that research. Maybe so. But unstated, unargued, unresearched reasons for a denial do not bar a bad-faith claim as a matter of law. At minimum, this raises a genuine disputed issue of material fact that precludes summary judgment.

Viewed in the light most favorable to Wall, there was enough here to survive summary judgment, and I believe the majority errs in concluding otherwise.